Jones, J.
The basis of the referee’s decision is, that under the words of the contract defendant did not obtain the sole and exclusive right to publish the work, and that there was no usage which either gives to the words used such a meaning as would embrace such sole and exclusive right, or make the passing of such a right a part of the contract.
If this basis is correct, it follows that notwithstanding the contract with defendant, the plaintiff had a right to give a license to as many other publishers as he saw fit, to publish this work.
In this view, the objections taken on the trial are immaterial ; the evidence received and that rejected could not possibly have affected the result.
Is this basis correct %
The proper construction of the words of this contract is that defendant should have the privilege of publishing as many copies of the book as he saw fit, on condition of paying therefor seven and one-half cents each copy.
*227 The argument against this construction and in favor of defendant’s view, to wit, that the contract amounted to an assignment of the copyright of the work, and gave the defendant the exclusive right to publish it, are, 1st, that the right to publish would be comparatively valueless unless it was exclusive, and, 2nd, that a publisher could not afford to undertake the expense of publication unless he had the exclusive right.
It is, however, evident, that a right to publish, although it is not an exclusive one, is not wholly valueless. Whether it is of sufficient value to justify the making of a particular contract, is a question for the publisher to determine, before entering into the contract. It may even be that a publisher would prefer paying to the author a small sum on each copy published for a non-exclusive right ‘ to publish as many copies as Ije pleased, to paying a larger sum for the exclusive right, depending on his ability to produce the work at the sum paid the author, in a style superior and at prices less than any other publisher can.
The price agreed to be paid the author wa s not so enormous as to preclude the idea that the publisher preferred making a contract at that price, whereby he did not get the exclusive right, to making one at a higher rate which should give such a right.
The construction contended for by the defendant, would be far more unreasonable than the one claimed by plaintiff.
Under the defendant’s construction, we would have an author parting with all right to the control of his copyright for a sum to be paid on each book when published, without any means to compel the publication of a single copy, or to claim damages for pon-publication.
So far as reasonableness goes, the weight of the argument is strongly in plaintiff’s favor.
*228 In truth, in such a contract as this each party relies on the interest of the other.
The publisher assumes that if he, in good faith, publishes with proper efforts to assure circulation, and the work finds favor with the public, and becomes a success, the author will not give a license to another publisher, except at an increased rate, proportioned to the success of the work, in which case he, the first publisher, can readily command the market by underr selling the second one; whereas, if with proper diligence and energy in getting out the work, advertising it, and otherwise bringing it before the public, it fails to be a success, then that no other publisher would care to publish it at any price.
The author, oh the other hand, assumes that the publisher makes the contract expecting to profit thereby, and that he will use every effort to makue the work successful; and if successful, that he, for his own profit, will publish as largely as the demand call’s for.
Thus each regards his rights and interests sufficiently protected by a contract bearing the construction the plaintiff assigns to the one in qustion.
This leads to the inquiry 'as to whether the evidence established the usage sought to be proved.
I think it was wholly insufficient to establish the claimed usage.
1. A usage must be proved by evidence of facts, and not by mere speculative opinion (Greenl. on Ev. § 251 ; Stark, on Ev. vol. 2, p. 361).
The witnesses relied on to establish the usage in this case, are all publishers. They give, it is true, their opinion that such a usage exists. This opinion, 'however, is purely speculative. Hone of the witnesses pretend to have had any actual practical experience of 'it. They all say (with the exception of Mr. Clark), that the point never came up in their business ; that they had never known it discussed between publishers, or *229 between publishers and authors, or between authors, and had never heard it spoken of except by the defendant.
Mr. Clark differs from the others only in saying that it came up for discussion between himself and partners some years ago; but he says that it never came up as a practical question in his business, or the business of any other publisher, to his knowledge. He further says, he generally provides for the exclusive right by written contracts, and relies on the contracts, and in some verbal contracts he relies on the honor of the author (fols. 104-105).
There cannot well be a weaker case made in support of a usage, or one resting more on speculative opinion than this, unless it is one where the witnesses brought to prove the custom have never had any connection with, or any dealings, in any shape or form, in the business, in relation to which the custom is sought to be proved.
2nd. A Usage must be established, known, certain and uniform.
Most of the witnesses testify that when they have a written contract they insert a clause giving an exclusive right.
It is certainly singular to insert a clause to secure that which a well-established, known and certain custom already fully secures to them. If, under an oral contract, without any special stipulation, the exclusive right is obtained by force of usage, so it is under a written contract without a written clause ; and e con-verso, if a special clause is requisite in a written contract so is an express stipulation in an oral one.
But one of the witnesses shows that the custom is not established and certain ; for he says that in some oral contracts he relies on the honor of the author (fol. 105). If the custom is good for anything it applies to all contracts (unless there is a stipulation excluding its *230 operation), and consequently there would be no necessity for relying solely on the author’s honor in any contract. Another witness shows that the usage claimed is not certain and uniform, for he says it gives the exclusive right, for a certain term, or the whole term of the copyright—that is to say, it may be for a term of years, never less than five years (fol. 107).
What is the usage, according to this witness ? Is it to pass the exclusive right for five, seven, eight years, or the whole term ?
If he means that the usage passes the right for only five years, or the whole term, if it is less than five years, leaving it to the agreement of the parties if it is to pass, for a longer term, then, he is at variance with the other witnesses, who place no such limitation on the effect of the usage.
3rd. The usage is unreasonable.
The views above expressed as to the construction the defendant claims for the words of the contract are equally applicable here.
From an examination of the evidence, it appears that the witnesses have formed their opinions from a process of reasoning, and not from the existence of facts.
The propositions on which the reasoning is formed, are : that they have never known a case where an author, after making a contract like this with a publisher, has given a license to publish to another publisher; that such custom .is necessary to protect publishers, otherwise they would be at the mercy of. authors. From these propositions they draw the conclusion that the custom does exist (fol. 99).
The propositions are not, even as matter of reasoning, sufficient to support the conclusion.
It does not appear that the witnesses ever knew or heard of a single instance in which a contract like this was entered into. Nor of how many such instances, if *231 any. But, assuming that they had heard of several such instances, the fact that the authors in those cases (being well satisfied with the first publisher), did not deem it to their profit or advantage to license other publishers, certainly does not warrant the presumption that there existed a usage which prohibited them from so doing, if occasion required; and as to publishers being under such a contract as this, at the mercy of the author, if such a custom does not prevail, they are no more so than authors would be at the mercy of the publishers if it did prevail. Both can protect themselves by proper stipulations, made either orally or in writing.
Judgment affirmed, with costs.